1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    EDGAR GARDNER, III,                          No.  2:14-cv-1583-TLN-CKD

12                    Plaintiff,

13         v.                                       **ORDER**

14    NATIONSTAR MORTGAGE LLC;
      RSM&A FORECLOSURE SERVICES,
15    LLC; & DOES 1–10,

16                    Defendants.

17

18

19         The matter is before the Court on Defendants Nationstar Mortgage LLC ("Nationstar")

20    and RSM&A Foreclosure Services LLC's ("RSM&A") ("collectively Defendants") motion to

21    dismiss (ECF No. 4) Plaintiff Edgar Gardner, III's ("Plaintiff") complaint (ECF No. 1-1, Ex. A).

22    For the reasons discussed below, the motion to dismiss is GRANTED IN PART and DENIED IN

23    PART.

24    **I.      Facts and Procedural History**

25

26         Plaintiff has already brought a lawsuit against the same Defendants in federal court, in

27    *Gardner v. RSM&A Foreclosure Services, LLC & Nationstar Mortgage, LLC*, 12-cv-2666-JAM-

28    AC (E.D. Cal. 2013), which was dismissed with prejudice.  That court set forth the relevant

                                                  1

factual allegations as follows:

> This case arises out of a loan refinance related to Plaintiff's property at 6650 18th Avenue in Sacramento, California ("subject property"). [Nationstar] previously moved to dismiss Plaintiff's complaint and that motion was granted with leave to amend. According to the FAC, Plaintiff has owned and lived at the subject property since 1979, and in 2007, Plaintiff refinanced his mortgage and obtained the loan at issue. The loan was secured by the subject property and is a payment option adjustable rate mortgage in which Plaintiff could initially select the monthly payment amount.
>
> A disclosure statement regarding the loan received by Plaintiff indicates that through the plan it is possible the monthly payment will be less than the monthly interest, thereby increasing the principal amount on the loan (negative amortization). The disclosure includes the following language: "In the event your balance exceeds your original loan amount by 120.00%, the payment amount may change more frequently and you will no longer have a minimum payment option."
>
> The Adjustable Rate Note entered into by the parties reiterates the possibility of negative amortization and states that the unpaid principal amount "can never exceed a maximum amount equal to 120.000%" of the principal amount originally borrowed. The Note indicates the holder will redetermine the monthly payment amount "[i]n the event the unpaid Principal would otherwise exceed that 120.000% limitation."
>
> According to the FAC, on May 4, 2011, Aurora Bank ([Nationstar]'s predecessor), notified Plaintiff that his loan would reach the 120% limitation ("negative amortization limit") on August 1, and that his minimum payment would jump from $1318.76 to $2531.99. Plaintiff was unable to pay the new monthly amount and the loan went into default. [The first] trustee's sale was scheduled for October 10, 2012.
>
> On February 16, 2012, Plaintiff's Counsel sent a letter to Aurora Bank "indicating that [Nationstar and RSM&A] improperly increased his monthly loan payment" and "demanding correction of the error in payment amount." Neither Aurora Bank, nor [Nationstar], has responded.

(Case No. 12-cv-2666, ECF No. 27.)

Ultimately, the amended complaint in that case brought five causes of action, which were each dismissed with prejudice: 1) breach of contract; 2) negligent misrepresentation; 3) fraudulent inducement; 4) a violation of the Real Estate Settlement Procedures Act; and 5) a request for declaratory relief. (Case No. 12-cv-2666, ECF No. 21 at 5–11 & ECF No. 27.)

Plaintiff filed the instant complaint in Sacramento County Superior Court on May 28,

2

2014.  (ECF No. 1-1, Ex. A.)  In the state court action, Plaintiff re-alleges much of the factual basis from Case No. 12-cv-2666, and makes the following additional assertions:

- "On May 12, 2012, a Notice of Default was recorded by Aurora Bank FSB c/o RSM&A Foreclosure Services, LLC.  RSM&A wrongly recorded the Notice of Default as they had not been properly substituted as trustee nor are they registered to do business in California."  (ECF No. 1-1, Ex. A ¶ 24.)

- "On May 25, 2012, a Corporate Assignment of Deed of Trust was recorded in the Official Records of Sacramento County wherein MERS assigns and transfers the beneficial interest under the Deed of Trust to Aurora Bank, FSB.  The Corporate Assignment of Deed of Trust was executed on January 23, 2012, but was not recorded for several months."  (ECF No. 1-1, Ex. A ¶ 26.)

- "In June 2012, Plaintiff sent Nationstar a Home Affordable Modification Program Packet (HAMP) packet.  Plaintiff never heard from Nationstar with regard to the paperwork he sent them."  (ECF No. 1-1, Ex. A ¶ 27.)

- "On September 20, 2012, a Substitution of Trustee was recorded in the Official Records of Sacramento County whereby Michele Rice, Vice President of Aurora Bank substituted RSM&A Foreclosure Services, LLC as trustee of the Deed of Trust.  The Substitution was dated May 29, 2012, and recorded several months later.  This fact can be perceived as backdating of documents.  RSM&A Foreclosure Services, LLC is not registered with the California Secretary of State to do business in California."  (ECF No. 1-1, Ex. A ¶ 28.)

- "In July 2013, Plaintiff submitted [a] HAMP modification package to Nationstar.  Nationstar did not acknowledge receipt at all."  (ECF No. 1-1, Ex. A ¶ 31.)

- "In April 2014, Plaintiff submitted a loan modification package to Nationstar through Neighborhood Assistance Corporation of America (NACA) and is still waiting for notice that the loan modification was received."  (ECF No. 1-1, Ex. A ¶ 32.)

- "On April 10, 2014, a [second] Notice of Trustee's Sale was recorded. . . . The Notice of Trustee's Sale is dated August 24, 2012, and by Kimberly Karas of RSM&A . . .  The

3

supposed date of execution of the Notice of Trustee's Sale of August 24, 2012, is approximately a year and [a] half before the official recording date."  (ECF No. 1-1, Ex. A ¶ 35.)

The instant complaint contains nine causes of action: (1) breach of implied covenant of good faith; (2) violation of California Civil Code § 2923.5 (against only Defendant RSM&A); (3) intentional misrepresentation; (4) unfair and deceptive business practices; (5) violation of Business and Professions Code § 17200 (unfair competition); (6) cancellation of instruments; (7) violations of California's Homeowner Bill of Rights; (8) a request for declaratory relief; and (9) a request for injunctive relief.[1]  (ECF No. 1-1, Ex. A.)

In summary, the claims, to varying degrees, rest on two factual threads: (1) that Defendants failed to acknowledge or process Plaintiff's loan applications; and (2) that Defendants proceeded with foreclosure without properly recording instruments showing an assignment of trustee or beneficiary had taken place.  The theory of liability with respect to (2) is stated at various points in the complaint, but is summarized in Plaintiff's assertion that: "Where there is a successor Trustee, there can be no valid non-judicial foreclosure where the trustee under the original deed of trust is not properly substituted with a "recorded" instrument.  To avoid confusion and litigation, there cannot be at any given time more than one person with the power to conduct a sale under a Deed of Trust.  Therefore, failure to execute or record a Substitution of Trustee is a substantial defect and impacted a right afforded to Plaintiff."  (ECF No. 1-1, Ex. A ¶ 63.)

Defendants submitted a motion to dismiss (ECF No. 4) the complaint and a supporting request for judicial notice (ECF No. 5) on July 10, 2014.  Plaintiff has filed an opposition[2] (ECF

---

[1] The complaint contains a "any and all" prayer for relief, including a request for a temporary restraining order and a preliminary injunction.  As Plaintiff does not argue separately for these forms of relief, the Court declines to address them on the instant motion.  (ECF No. 1-1, Ex. A at 29.)

[2] Generally, Plaintiff's opposition (ECF No. 9) references facts and causes of action that do not appear in the complaint.  For example, the opposition states additional, albeit vague details about requests for a single point of contact (ECF No. 9 at 8) and Plaintiff's attempt to contact Nationstar regarding a submitted HAMP packet (ECF No. 9 at 7); those allegations do not appear to be in the complaint.  The opposition references claims for negligent misrepresentation and for "dual tracking" under Cal. Civ. Code § 2924.18 (ECF No. 9 at 13 & 17 ) which do not appear in the complaint.   Plaintiff should include all relevant facts and causes of action in the complaint.

No. 9) to the motion to dismiss and Defendants have filed a reply (ECF No. 12) to the opposition. This matter was submitted without oral argument, on the Court's own motion, on September 5, 2014.

## II.        Defendants' Request for Judicial Notice

Defendants request judicial notice of several instruments referenced by Plaintiff in the complaint.  (ECF No. 10.)  Plaintiff has not opposed the request.  Accordingly, the Court takes judicial notice, under Fed. R. Evid. 201, of the following publicly recorded documents:

- A notice of default (the "NOD"), recorded May 25, 2012, by RSM&A.  The document states RSMA is "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary."[3]  (ECF No. 5, Ex. 1.)

- A notice of trustee's sale, recorded September 20, 2012, by RSM&A.  The document is dated August 24, 2012, and states RSM&A is the trustee under the DOT.  (ECF No. 5, Ex. 2.)

- A notice of trustee's sale, recorded April 10, 2014, by RSM&A.  The document is dated August 24, 2012.  The document states RSM&A is the trustee under the DOT.  (ECF No. 5, Ex. 3.)

The Court notes the following discrepancies between the instruments attached in Defendants' request for judicial notice, and the complaint:

- Plaintiff states that on May 12, 2012, a notice of default was recorded and on May 25, 2012, a corporate assignment deed of trust was recorded.  (ECF No. 1-1, Ex. A ¶ 26.) As indicated above, the attached instruments by Defendants show a notice of default was

---

[3] The Court also notes that Exhibit 1, together with the NOD, contains a declaration of compliance with Cal. Civ. Code § 2923.5 (providing that the beneficiary contact the borrower to assess alternatives to foreclosure).  That declaration is dated May 7, 2012.  It is not clear if that declaration is part of the NOD, which was recorded, or is a separate document that was not recorded.  At this juncture, the Court notes the contents of this declaration, but does not take judicial notice of it.  Plaintiff asserts in his first claim that Defendants have not complied with § 2923.5; and the document attached by Defendants is simply a piece of paper purporting to show compliance.  Hence, the Court does not consider the document either to be, or to contain, a fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

1    recorded on May 25, 2012; and no party has attached a separate corporate assignment

2    deed of trust.

3    • Plaintiff also asserts: on September 20, 2012, a "Substitution of Trustee" was recorded

4    and that document is dated May 29, 2012.  (ECF No. 1-1, Ex. A ¶ 28.)  As indicated

5    above, the filings contain a notice of trustee's sale recorded on September 20, 2012, and

6    dated August 24, 2012; but otherwise, it is not clear which document Plaintiffs are

7    referencing.

8    Plaintiff is advised to clarify these discrepancies in future filings.

9    **III.    Standard of Review**

10

11    Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

12    statement of the claim showing that the pleader is entitled to relief."  On a motion to dismiss, the

13    factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322

14    (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn

15    from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*,

16    373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary

17    to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A

18    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

19    the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

20    at 678 (citing *Twombly*, 550 U.S. at 556).

21    Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

22    factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

23    1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

24    unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

25    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

26    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

27    ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

28    statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

6

facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   Analysis

### A. Collateral estoppel

Defendants move to dismiss the complaint in full on the basis of collateral estoppel. Collateral estoppel (i.e. issue preclusion) "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995). "Three factors must be considered before applying collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (internal quotations and citations omitted).

Collateral estoppel does not bar the instant claims. As stated in the order dismissing Plaintiff's suit in Case No. 12-cv-2666, Plaintiff's causes of action, and that court's disposition, concerned the terms of his 2007 loan refinance, not subsequent attempts to obtain loan modifications. (Case No. 12-cv-2666, ECF No. 27.) The Court also does not locate any analysis done by the prior court regarding whether the substitution of various entities, and their

1    recording, was properly done.  So, at minimum, the prior court did not determine these issues as

2    "a critical and necessary part of the judgment."  *McQuillon*, 368 F.3d at 1096.

3        B.  Res judicata

4        Defendants also move to dismiss the complaint in full on the basis of res judicata (i.e.

5    claim preclusion).  The doctrine of res judicata bars "all grounds for recovery which could have

6    been asserted, whether they were or not, in a prior suit between the same parties ... on the same

7    cause of action, if the prior suit concluded in a final judgment on the merits."  *Int'l Union of*

8    *Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr*,

9    994 F.2d 1426, 1429 (9th Cir. 1993) (citing *Ross v. Int'l Bhd. of Elec. Workers,* 634 F.2d 453, 457

10   (9th Cir.1980)).  Case No. 12-cv-2666 involved the same Plaintiff and Defendants, and that suit

11   concluded in a final judgment on the merits.  Accordingly, the Court looks to whether Plaintiff's

12   instant claims constitute the same causes of action, which either were, or could have been,

13   asserted in the prior suit.

14       "In determining whether successive claims constitute the same cause of action, [courts]

15   consider the following: (1) whether rights or interests established in the prior judgment would be

16   destroyed or impaired by prosecution of the second action; (2) whether substantially the same

17   evidence is presented in the two actions; (3) whether the two suits involve infringement of the

18   same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

19   *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).  "The last of these

20   criteria is the most important." *Id*. at 1202.

21       Looking to the four factors enumerated in *Constanti*, the Court concludes that Plaintiff's

22   claims here are not barred under res judicata.  First, (1) No rights or interests established in the

23   prior judgment would be impaired in the instant action, because the prior action concerned the

24   alleged unlawfulness of Plaintiff's entry into a negative amortization loan, whereas here, the

25   instant case involves subsequent attempts to modify Plaintiff's loan or allegations regarding

26   improper substitution or recording.  Secondly, (2) The prior action was dismissed with prejudice

27   on a Rule 12(b)(6) motion, so no substantial evidence was presented in that case.  Thirdly, (3) The

28   present action concerns Plaintiff's right to modify his loan and have foreclosure occur with the

8

1    correct entities having been substituted on properly recorded instruments, not Plaintiff's rights

2    under the terms of the loan agreement.

3    Lastly, with respect to (4) – whether the instant causes of action arise out of the same

4    transactional nucleus of facts – Plaintiff filed the complaint in case No. 12-cv-2666, in September,

5    2012, and an amended complaint in April, 2013.  (Case No. 12-cv-2666, ECF No. 27 at 3.)  By

6    virtue of the timeline stated by Plaintiff in the instant complaint, it is unlikely that Plaintiff could

7    have brought claims in that suit relating to his loan modification attempt made in July, 2013.

8    Plaintiff could not have brought suit based on an April, 2014 modification attempt.  Plaintiff

9    could, by virtue of timing, have brought a cause of action in the prior suit, with respect to his

10   June, 2012 loan modification attempt.  However, that loan modification attempt, like the others,

11   does not appear to be related to the terms of 2007 loan, or his entry into that loan, which was the

12   "transactional nucleus of facts" giving rise that complaint.

13   In the instant case, Plaintiff also asserts an ongoing pattern of attempts by Defendants to

14   foreclose without properly documenting substitutions of beneficiary or trustee.  These issues are

15   not related to the terms of Plaintiff's 2007 loan, or his entry into that loan, which was the

16   transactional nucleus of facts alleged in Case No. 12-cv-2666.

17   In summary, Plaintiff's prior claims involved the terms of, or his entry into, his 2007

18   negative amortization loan.  The instant claims concern loan modification attempts, allegations

19   that Defendants have proceeded with foreclosure without properly substituting various entities,

20   and allegations that Defendants have not properly recorded documents relevant to foreclosure.

21   Those claims are not barred.

22

     C.  Claim 1: Breach of implied covenant of good faith and fair dealing

23

24   Under California law, all contracts contain an implied covenant of good faith and fair

25   dealing.  This covenant requires each contracting party to refrain from doing anything to injure

26   the right of the other to receive the benefits of the agreement.  *San Jose Prod. Credit Ass'n v. Old*

27   *Republic Life Ins. Co.,* 723 F.2d 700, 703 (9th Cir. 1984) (citing *Egan v. Mutual of Omaha*

28   *Insurance Company,* 24 Cal.3d 809, 818 (1979)). "It is universally recognized [that] the scope of

conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Jenkins v. JP Morgan Chase Bank*, N.A. 216 Cal. App. 4th 497, 524 (2013) (citing *Carma Developers, Inc. v. Marathon Development Cal. Inc.*, 2 Cal. 4th 342, 373 (1992)). "Because contracts differ, the nature and extent of the duties owed under the implied covenant are also variable and will depend on the contractual purposes." *Id.* (citing *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1147 (1990)).

The Court agrees with Defendants that, at this juncture, the only enforceable contract identified by Plaintiff is the loan contract he entered into in 2007. Plaintiff brought a cause of action for breach of contract, with respect to that loan, in Case No. 12-cv-2666; that cause of action was dismissed with prejudice.

Plaintiff also alleges under this cause of action as follows: that he submitted loan modification applications in June, 2012, July, 2013, and April, 2014, and did not receive responses (ECF No. 1-1, Ex. A. ¶¶ 48–53); that a substitution of trustee occurred on May 29, 2012, but was not recorded until September, 2012 (ECF No. 1-1, Ex. A ¶ 49); that RSM&A is not registered to do business in California (ECF No. 1-1, Ex. A ¶ 49); and that Defendants did not "record reliable or accurate documents to support a non-judicial foreclosure" (ECF No. 1-1, Ex. A ¶ 54). However, Plaintiff does not show Defendants contracted for a loan modification such that Defendants engaged in unfair dealing or a lack of good faith with respect to this contract. Therefore, this claim is dismissed with leave to amend.

D. Claim 2: Cal. Civ. Code § 2923.5

Cal. Civ. Code § 2923.5 provides, generally, that the mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default until initial contact has been made with the borrower for the purpose of discussing options so that the borrower may avoid foreclosure.[4] The relevant factual allegations for a claim under § 2923.5, as stated in the complaint, appear to be:

---

[4] The relevant time period for this claim appears to be when the NOD was recorded, in May, 2012. Plaintiff does not reference any materially different provisions in Cal. Civ. Code § 2923.5 as it stood at the time the NOD was recorded, compared to § 2923.5 as it stood following any subsequent amendments.

- "On May 12, 2012, a Notice of Default was recorded by Aurora Bank FSB c/o RSM&A Foreclosure Services, LLC.  RSM&A wrongly recorded the Notice of Default as they had not been properly substituted as trustee nor are they registered to do business in California."  (ECF No. 1-1, Ex. A ¶ 24.)

- "On May 25, 2012, a Corporate Assignment of Deed of Trust was recorded in the Official Records of Sacramento County wherein MERS assigns and transfers the beneficial interest under the Deed of Trust to Aurora Bank, FSB.  The Corporate Assignment of Deed of Trust was executed on January 23, 2012, but was not recorded for several months."  (ECF No. 1-1, Ex. A ¶ 26.)

- On September 20, 2012, a Substitution of Trustee was recorded in the Official Records of Sacramento County whereby Michele Rice, Vice President of Aurora Bank substituted RSM&A Foreclosure Services, LLC as trustee of the Deed of Trust.  The Substitution was dated May 29, 2012, and recorded several months later.  This fact can be perceived as backdating of documents.  RSM&A Foreclosure Services, LLC is not registered with the California Secretary of State to do business in California."  (ECF No. 1-1, Ex. A ¶ 28.)

Liberally construed, Plaintiff's point may be that the NOD was recorded sometime in May, 2012 prior to the substitution of RSM&A for Aurora as beneficiary.  However, the NOD was signed by an agent for RSM&A, not Aurora.  Thus, the argument would be that a properly substituted "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" never complied with the notice requirements (i.e. contacting the borrower) described in § 2923.5, prior to recording the notice of default.

Presently, Plaintiff cites no authority for the position that when the substitution of a beneficiary is either executed or recorded after a notice of default, but the notice of default was recorded by the substituted beneficiary, that those circumstances permit a claim under § 2923.5. Further, as stated, *supra,* Defendants have filed with the Court a document purporting to show compliance with section 2923.5, dated May 7, 2012.  That document states Aurora Bank is the beneficiary and loan servicer, and it appears to be signed by an agent for Aurora.  (ECF No. 5, Ex.

11

1.) The Court does not take judicial notice of that document at this juncture, but Plaintiff does not appear to dispute that Aurora contacted him, in purported compliance with section 2923.5. Claim 2 is dismissed with leave to amend if Plaintiff can show different facts or produce legal authority showing that this is a plausible claim for relief.[5]

E. Claim 3: Intentional Misrepresentation

Plaintiff cites the following elements that must be met to prevail on a claim of intentional misrepresentation:

> (1) [T]he defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff.

*Manderville v. PCG & S Group, Inc.* 146 Cal. App. 4th 1486, 1498 (2007). Plaintiff appears to state an intentional misrepresentation occurred: 1) because Defendants have not complied with HBOR requirements regarding acknowledging receipt of loan modifications; and 2) Defendants wrongfully recorded documents in furtherance of foreclosure. (ECF No. 1-1 ¶¶ 65–75.)

However, allegations of fraud must, under Fed. R. Civ. P. 9(b), "be accompanied by the 'who, what, when, where, and how' of the misconduct charged. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Cooper v. Pickett*, 137 F.3d 1120, 1124 (9th Cir. 2009). The facts pled (ECF No. 1-1 ¶¶ 65–75) do not meet the pleading requirements for a fraud claim under Rule 9(b). Plaintiff does not allege, with any particularity, a statement made by Defendants, reasonably relied on by Plaintiff, resulting in harm. This claim is dismissed with leave to amend.

/ / /

---

[5] The parties do not take a position on whether any applicable portions of Cal. Civ. Code § 2923.5 are federally preempted. *See e.g. Rodriguez v. JP Morgan Chase & Co.* 809 F.Supp.2d 1291, 1295 (S.D. Cal. 2011).

12

F. Claim 4: Unfair And Deceptive Business Act Practices

It is unclear which law Plaintiff is invoking.  This cause of action is entitled "Unfair and Deceptive Business Act Practices (UDAP) Against All Defendants", but Plaintiff cites the standing requirements for Cal. Bus. & Prof. Code § 17200, *et seq*., i.e. California's Unfair Competition Law ("UCL"), which forms the basis for Plaintiff's fifth, and independent, cause of action.  (ECF No. 1-1 ¶ 77.)

Defendants construe this cause of action as if Plaintiff tries to state a claim under 15 U.S.C. § 45, *et seq.*, the Federal Trade Commission ("FTC") Act, which prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."  15 U.S.C. § 45(a)(1).  The authority cited by Defendants indicates there is no private right of action under the FTC Act.  *See Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1201, n. 20 (C.D. Cal. 2008) ("The FTC Act does not provide a private right of action. *Fisher v. Coca–Cola Bottling Co. of Los Angeles,* No. CV 78 0479–F, 1979 WL 1597, *2 (C.D.Cal. Mar. 12, 1979) ("There is no private right of action under the Federal Trade Commission Act. Initial remedial power lies with the Commission itself," citing *Carlson v. Coca–Cola Company,* 483 F.2d 279, 280 (9th Cir.1973))).

As it is not presently clear under which law Plaintiff is attempting to state a claim, the claim is dismissed with leave to amend.

G. Claim 5: California's Unfair Competition Law

California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq*., prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200).  Its purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Id*. (citing *Kasky v. Nike, Inc.* 27 Cal. 4th 939, 949 (2002)).  To bring suit under the UCL, a person must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e. *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 322.

The relevant allegations that the Court locates in the complaint, specific to the UCL claim, are: Defendants have collected mortgage payments and fees for foreclosure related services; Plaintiff has suffered a damaged credit score; Plaintiff has "suffered additional interest and a pointless loan extension."   (ECF No. 1-1 ¶¶ 101, 102.)  Presently, these allegations do not constitute "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).  For example, Plaintiff does not elaborate any further on how his mortgage payments or related fees, specific to the allegations in this complaint, and not the terms of his 2007 negative amortization loan that were at issue in Case No. 12-cv-2666, violate the UCL.  Claim 5 is dismissed with leave to amend.[6]

H.  Claim 6: Cancellation of Instruments

Cal. Civ. Code § 3412 states:

> A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.

Plaintiff seeks cancelation of two instruments: the NOD and the 2014 Notice of Trustee's Sale.

Plaintiff's stated basis for seeking cancelation of the NOD is the following assertions:

- "On May 12, 2012, a Notice of Default was recorded by Aurora Bank FSB c/o RSM&A Foreclosure Services, LLC.  RSM&A wrongly recorded the Notice of Default as they had not been properly submitted as trustee nor are they registered to do business in California."   (ECF No. 1-1, Ex. A ¶ 111.)

- "On May 25, 2012, a Corporate Assignment Deed of Trust was recorded in the Official Records of Sacramento County wherein MERS assigns and transfers the beneficial interest under the Deed of Trust to Aurora Bank, FSB.  The Corporate Assignment Deed of Trust was executed on January 23, 2012, but was not recorded for several months.  This

---

[6] The parties do not brief the Court on other cases—California or federal—in which courts have construed, or declined to construe, violations of the HBOR as also forming a cause of action under the UCL.

fact can be perceived as backdating of documents." (ECF No. 1-1, Ex. A ¶ 113.)

- "On September 20, 2012, a Substitution of Trustee was recorded in the Official Records of Sacramento County whereby Michele Rice, Vice President of Aurora Bank substituted RSM&A Foreclosure Services, LLC as trustee of the Deed of Trust. The Substitution was dated May 29, 2012, and recorded several months later. This fact can be perceived as backdating of documents. RSM&A Foreclosure Services, LLC is not registered with the California Secretary of State to do business in California." (ECF No. 1-1, Ex. A ¶ 115.)

Beyond the lack of clarity discussed, *supra*, over which instruments Plaintiff is referring to in these assertions, Plaintiff has not pled sufficient facts to show how the NOD "if left outstanding [] may cause serious injury." Cal. Civ. Code § 3142. Were the faults alleged by Plaintiff cured, it is not apparent that foreclosure, or any of the related injuries, would be prevented. Plaintiff asserts again, under this cause of action, that he has not received an acknowledgement of his 2013 and 2014 loan modification attempts, but does not explain how the alleged flaws in the NOD are relevant to these attempts.

Plaintiff's stated basis for seeking cancellation of the April, 2014 Notice of Trustee's Sale is the following assertion: "On April 10, 2014, a Notice of Trustee's Sale was recorded in the official records of the county recorder. The Notice of Trustee's Sale is dated August 24, 2012, by Kimberly Karas of RSM&A Foreclosure Services, LLC. RSM&A are not registered with the Secretary of State to do business in California. The supposed date of execution of the Notice of Trustee's Sale of August 24, 2012, is approximately a year and half before the official recording date. The difference between the execution and recording of the Notice of Trustee's Sale shows that the document is not reliable." (ECF No. 1-1, Ex. A ¶ 120, emphasis from original omitted.)

Plaintiff has not pled sufficient facts to show how the NOD "if left outstanding [] may cause serious injury." Cal. Civ. Code § 3142. Were the faults alleged by Plaintiff cured, it is not apparent that foreclosure, or any of the asserted injuries, would be prevented. Claim 6 is dismissed with leave to amend.

/ / /

I. <u>Claim 7: Homeowner Bill of Rights, Cal. Civ. Code §§ 2924.10, 2924.11, 2923.7, 2924.17, 2924(a)(6)</u>

Claim 7 alleges violations under numerous sections of California's Homeowner Bill of Rights, Cal. Civ. Code §2920 *et seq.*.

    a. *Section 2924.10*

Section 2924.10 provides that, upon submission by the borrower of a loan modification or related document, the servicer will provide written acknowledgement within five days of receipt, and the acknowledgment will include a description of the loan modification process, relevant deadlines, expiration dates for submitted documents, and information on a deficiency in the application.  Cal. Civ. Code § 2924.10.

Plaintiff states that in July, 2013, he "submitted [a] HAMP modification package to Nationstar.  Nationstar did not acknowledge receipt at all.  Nationstar did not provide notice of information regarding the application process, missing documents, or a deadline for submitting documents."  (ECF No. 1-1, Ex. A ¶ 31.)  Plaintiff also states, with respect to his April, 2014 loan modification submission through NACA, that Nationstar did not acknowledge receipt within five days, and "did not give notice providing information about the application process, advising Plaintiff of any missing documents needed to make the application complete…."  (ECF No. 1-1, Ex. A ¶ 70.)

Plaintiff has alleged sufficient facts, accepted as true, stating that loan modifications applications were submitted in July, 2013 and April, 2014, and that he did not receive the acknowledgement required under § 2924.10.  Plaintiff has stated a claim under Cal. Civ. Code § 2924.10.

    b. *Section 2924.11*

Section 2924.11 provides, generally, that mortgage servicers may not record a notice of default when a foreclosure prevention alternative has been approved in writing, or a foreclosure

16

1   prevention alternative has been accepted by the borrower.  *See e.g.* § 2924.11(a) ("If a foreclosure

2   prevention alternative is approved in writing prior to the recordation of a notice of default, a

3   mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of

4   default …").

5          Here, Plaintiff does not allege a foreclosure prevention plan has been approved in writing,

6   that he has accepted a foreclosure prevention alternative, or another set of circumstances covered

7   by § 2924.11(a)-(g).[7]  Thus, a claim under § 2924.11 is dismissed with leave to amend.

8

9          c.   *Section 2923.7*

10         Section 2923.7 provides, in relevant part, that upon request from the borrower, Defendant

11   must "promptly establish a single point of contact" with the borrower, in order to facilitate

12   communication regarding an "available foreclosure prevention alternative," such as a loan

13   application submitted by Plaintiff.

14         Plaintiff references § 2923.7 (ECF No. 1-1 ¶ 128) but otherwise makes no clear

15   allegations regarding a failure by Defendants to provide a single point of contact.  The claim

16   under § 2923.7 is dismissed with leave to amend.

17         d.   *Section 2924.17*

18

19         Section 2924.17 provides, generally, that instruments recorded in connection with a

20   foreclosure (including a notice of default, notice of sale, assignment of a deed of trust, or

21   substitution of trustee), and any declaration recorded pursuant to section 2923.5 (attesting to the

22   fact that the mortgage servicer has contacted the borrower to discuss options to avoid foreclosure)

23   shall be "accurate and complete and supported by competent and reliable evidence."

24         The only documents alleged to be wrongly recorded or executed, after January 1, 2013

25   when the HBOR went into effect, is the April 10, 2014 Notice of Trustee's sale.[8]  The relevant

26   ───────────────────
   [7] *See* Cal. Civ. Code § 2924.18.

27   [8] *See Sepehry-Fard v. Aurora Bank FSB*, 2013 WL 2239820, at *3 (N.D. Cal. 2013); *McGough v. Wells Fargo Bank,
   N.A.*, 2012 WL 5199411, at *5, n. 4 (N.D. Cal. 2012) ("[The HBOR] amendments do not go into effect until Jan. 1,
28   2013 and there is no indication that the law is intended to be, or will be, applied retroactively").

1   factual allegation in support of this claim appears to be: "On April 10, 2014, a Notice of Trustee's

2   Sale was recorded in the official records of the county recorder. The Notice of Trustee's Sale is

3   dated August 24, 2012, by Kimberly Karas of RSM&A Foreclosure Services, LLC. RSM&A are

4   not registered with the Secretary of State to do business in California. The supposed date of

5   execution of the Notice of Trustee's Sale of August 24, 2012, is approximately a year and half

6   before the official recording date. The difference between the execution and recording of the

7   Notice of Trustee's Sale shows that the document is not reliable." (ECF No. 1-1, Ex. A ¶ 120,

8   emphasis from original omitted.)

9

10          Without more, Plaintiff does not adequately allege conduct, post-enactment of the HBOR,

11  that violates § 2924.17.

12      e.  *Section 2924(a)(6)*

13          Section 2924(a)(6) provides:

14              No entity shall record or cause a notice of default to be recorded or

15              otherwise initiate the foreclosure process unless it is the holder of
                the beneficial interest under the mortgage or deed of trust, the

16              original trustee or the substituted trustee under the deed of trust, or
                the designated agent of the holder of the beneficial interest. No

17              agent of the holder of the beneficial interest under the mortgage or
                deed of trust, original trustee or substituted trustee under the deed

18              of trust may record a notice of default or otherwise commence the
                foreclosure process except when acting within the scope of

19              authority designated by the holder of the beneficial interest.

20          Plaintiff references § 2924(a)(6) (ECF No. 1-1, Ex. A ¶ 129), but otherwise makes no

21  clear allegation under this section.  As discussed, *supra*, Plaintiff makes multiple statements

22  regarding when various entities were substituted as beneficiaries or trustees, and when documents

23  demonstrating the substitution were recorded.  At present, it is not possible for the Court to

24  comprehend which documents Plaintiff is referring to, and how Plaintiff's allegations comport

25  with the recorded documents attached in Defendants' (unopposed) request for judicial notice.

26  Plaintiff is advised to provide a coherent set of facts and a coherent legal argument to support his

27  general assertion that: "Where there is a successor Trustee, there can be no valid non-judicial

28  foreclosure where the trustee under the original deed of trust is not properly substituted with a

18

1    "recorded" instrument.  To avoid confusion and litigation, there cannot be at any given time more

2    than one person with the power to conduct a sale under a Deed of Trust.  Therefore, failure to

3    execute or record a Substitution of Trustee is a substantial defect and impacted a right afforded to

4    Plaintiff."  (ECF No. 1-1, Ex. A ¶ 63 ).  A claim under § 2924(a)(6) is dismissed with leave to

5    amend.

6          J.   Claim 8 (Declaratory Relief) and Claim 9 (Injunctive Relief)

7              Plaintiff's claims for declaratory and injunctive relief are dismissed on the basis that

8    "[d]eclaratory and injunctive relief are not independent claims, rather they are forms of relief."

9    *Lane v. Vitek Real Estate Indus. Grp.,* 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010).  If Plaintiff

10   prevails on any other cause of action, and declaratory or injunctive relief are the appropriate

11   remedy, then those forms of relief remain available, just as economic damages are available.

12   Plaintiff should clarify in any future filing whether there is a basis for separate causes of action

13   for declaratory or injunctive relief.

14   **V.    Order**

15   • Defendants' Motion to Dismiss is GRANTED with respect to claim 1 (breach of implied

16      covenant of good faith); claim 2 (California Civil Code § 2923.5); claim 3 (intentional

17      misrepresentation); claim 4 (unfair and deceptive business practices); claim 5

18      (California's UCL); claim 6 (cancellation of instruments); claim 8 (declaratory relief); and

19      claim 9 (injunctive relief).  Plaintiff is given leave to amend these claims.

20   • Defendants' Motion to Dismiss is DENIED with respect to claim 7, to the extent Plaintiff

21      states a claim under Cal. Civ. Code § 2924.10.  Otherwise, the motion to dismiss is

22      GRANTED with respect to Cal. Civ. Code §§ 2924.11, 2923.7, 2924.17, and 2924(a)(6),

23      which are also cited in this cause of action.  Plaintiff is given leave to amend claim 7.

24   • Plaintiff shall file and serve a First Amended Complaint within 14 days of entry of this

25      Order.  The First Amended Complaint should comply with Fed. R. Civ. Proc. 8, which

26      requires "a short and plain statement" of Plaintiff's entitlement to relief.

27   */ / /*

28

- Defendants shall file their responsive pleading within 21 days of service of the First Amended Complaint.

Dated:  March 25, 2015

_____
Troy L. Nunley
United States District Judge

20